UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTOINE TRAMBLE,

                Petitioner,              Case No. 11-cv-12235
                                            HON. BERNARD A. FRIEDMAN

v.

LLOYD W. RAPELJE,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

This matter is before the Court on Antoine Tramble's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is presently incarcerated at the Saginaw Correctional Facility in Freeland, Michigan. He challenges his convictions for first-degree premeditated murder, felon in possession of a firearm, carrying a concealed weapon, and possession of a firearm during the commission of a felony, on the grounds that the prosecutor engaged in misconduct and presented insufficient evidence to support his conviction. Petitioner also contends that he received ineffective assistance of counsel. The Court denies habeas relief.

## I.    Facts and Procedural History

Petitioner's convictions arise from the shooting death of Lorenzo Pertee in Detroit, Michigan, on April 14, 2008. The Michigan Court of Appeals provided the following factual overview of the case, which is presumed to be correct on habeas review. *See Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 F. App'x 730 (6th Cir. 2002).

> Defendant stood trial for the April 14, 2008 shooting death of Lorenzo Pertee, which occurred outside 18053 Bradford Street in Detroit. Several friends and relatives had gathered at 18053 Bradford to play cards and dominoes, drink

alcohol, smoke marijuana, and listen to music, as the group had done previously
on several occasions.  Some trial evidence established that the victim had insulted
defendant in front of the other guests, including defendant's girlfriend.  The
testimony of several witnesses at trial reflected that defendant left the gathering
before the victim, defendant retrieved a revolver from his van, and minutes later
defendant shot the victim after he had left the house and headed to his car.  A
medical examiner described that the victim sustained four gunshot entrance
wounds in his back, and another entrance wound to one of his shoulders.

*People v. Tramble*, No. 291902, 2012 WL 3186219, *1 (Mich. Ct. App. Aug. 12, 2010).

Petitioner was convicted after a jury trial in Wayne County Circuit Court.  He was

sentenced on April 24, 2009, to life in prison without possibility of parole for the murder

conviction, 34 to 120 months in prison for the felon in possession and carrying a concealed

weapon convictions, the foregoing to be served concurrently with one another.  The circuit court

also sentenced him to a consecutive two-year term of incarceration for the felony firearm

conviction.

Petitioner filed a direct appeal with the Michigan Court of Appeals and raised the

following errors:

I.      Prosecutorial misconduct during the trial and in closing argument denied
        petitioner his due process rights to a fair trial, requiring reversal of his
        convictions.

II.     The prosecutor presented insufficient evidence to support a finding that petitioner
        was guilty beyond a reasonable doubt of first-degree murder, and, thus, denied
        petitioner's state and federal constitutional due process rights.

III.    The defendant was deprived of his right to the effective assistance of counsel
        based on the repeated errors and omissions of defense counsel.

The Michigan Court of Appeals affirmed petitioner's convictions.  *People v. Tramble*,

No. 291902, 2012 WL 3186219 (Mich. Ct. App. Aug. 12, 2010).  Petitioner then filed an

application for leave to appeal in the Michigan Supreme Court, raising the aforementioned

claims.  The Michigan Supreme Court denied leave to appeal. *People v. Tramble*, 488 Mich. 996

(2010).  Thereafter, petitioner filed the instant habeas petition reiterating said claims.

## II.      Standard

28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>
> (1)      resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable determination of
> the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule

that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of

facts that are materially indistinguishable from a decision of [the Supreme] Court and

nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S.

12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the

writ if the state court identifies the correct governing legal principle from [the Supreme] Court

but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539

U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).  However, "[i]n order for a federal

court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state

court's decision must have been more than incorrect or erroneous.  The state court's application

must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. __, 131 S. Ct. 770, 789 (2011), (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original). "[W]hile the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations unless petitioner rebuts this presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## III.    Discussion

### A.    Prosecutorial Misconduct Claim

Petitioner argues that the prosecutor committed misconduct by vouching for the

credibility of civilian witnesses, attempting to lessen the burden of proof required to establish petitioner's guilt and referring to facts not in evidence.  Respondent argues that these claims are procedurally defaulted.  "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."  *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."  *Lambrix*, 520 U.S. at 525.  In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of this claim.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *See Parker v. Matthews*, __ U.S.__, 132 S. Ct. 2148, 2153, (June 11, 2012).  In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  This Court must inquire whether the Michigan Court of Appeals' decision denying petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood an comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Parker*, __ U.S. at __, 132 S. Ct. at 2155, (quoting *Harrington*, 562 U.S. at __, 131 S. Ct. at 786-87).

First, petitioner contends that the prosecutor improperly vouched for the credibility of civilian witnesses.  In her closing argument, the prosecutor acknowledged that the testimony of prosecution witnesses, while essentially uniform, contained some inconsistencies.  The

5

prosecutor argued that these inconsistencies should be blamed on the traumatic nature of the

event witnessed rather than the witnesses' credibility.  The prosecutor argued:

> [W]hen you look at the state of the person when they're that traumatized and
> they're that upset it is very unlikely that those folks are lying.

Tr., Vol. IV, at 127.

Prosecutors may not vouch for a witness's credibility.  Vouching and an expressions of

personal opinion regarding the accused's guilt "pose two dangers: such comments can convey

the impression that evidence not presented to the jury, but known to the prosecutor, supports the

charges against the defendant and can thus jeopardize the defendant's right to be tried solely on

the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the

imprimatur of the Government and may induce the jury to trust the Government's judgment

rather than its own view of the evidence."  *United States v. Young*, 470 U.S. 1, 18-19 (1985).  In

this case, the Michigan Court of Appeals found that the prosecution did not improperly vouch for

the witnesses' credibility.  The appeals court held that:

> Contrary to defendant's contention, the prosecutor in no way suggested that she
> had any "special knowledge of the witnesses' truthfulness."  *People v. Seals*, 285
> Mich. App. 1, 22; 776 N.W.2d 314 (2009), . . . . Instead, the prosecutor properly
> argued on the basis of the trial testimony that the witnesses who observed or were
> present at the time of the April 14, 2008 shooting were worthy of belief.  *Seals*,
> 285 Mich. App. at 22 ("[T]he prosecutor may argue from the facts that a witness
> should be believed."). . . . The witnesses themselves had recounted at trial their
> presence when the traumatic shooting took place, and several police officers
> testified at trial about out-of-court statements made by the witnesses shortly after
> the shooting and their agitated states at the time they made their statements.  In
> summary, the prosecutor engaged in no improper vouching.

*Tramble*, 2010 WL 3186219 at *4.

The Court concurs in this assessment of the prosecutor's remarks.  The prosecutor merely

argued that the witnesses' testimony was generally consistent and any discrepancies were minor

in light of the gravity of the event that transpired before them.

Second, petitioner argues that the prosecutor attempted to lessen the burden of proof during her opening and closing statements.  Petitioner objects to the following portions of the prosecutor's remarks:

> Now, ladies and gentlemen, as we are not machines, we are not robots, I expect that you will hear some slight inconsistencies between the witnesses' testimony. That's not unusual. People see things differently and people hear things differently depending on where they're standing, what they're looking at, and what keeps their attention.... [Opening statement.]
>
> They describe the same event, ladies and gentlemen. They describe the same event and I submit to you, ladies and gentlemen, are there inconsistencies in [the] testimony? Sure. Are there little nuances or little things that are different between each person's testimony? Absolutely.
>
> And I'd expect nothing but that, ladies and gentlemen, cause people aren't robots. People don't process information the exact same way. People aren't looking in the same direction as each other at all times so I would ask you not to be disturbed by that because I'll tell you this, ladies and gentlemen.
>
> The evidence again from that witness stand places the Defendant with that gun in his hand pulling it out and firing multiple times.... [Closing argument.]

*Id.*

Petitioner also objects to the following portion of the prosecutor's closing argument:

> I submit to you, ladies and gentlemen, as thoughtful and thinking folks, don't be distracted by things that don't apply to this case. There's no question about trying to narrow down who was there. No question about who committed the murder.
>
> So fingerprints and DNA I submit you can talk all day long about what's [not] there because it will give you a chance to not look at what is there. What is there is the strength of the testimony of Miss Ivory, Mr. Ward, Miss Laston and Mr. Foster.

*Id.* at *5.

The Michigan Court of Appeals concluded that the foregoing statements were in no way

7

"akin to improper burden shifting."  *Id.*  This Court agrees with the state court's assessment that the challenged argument does not constitute prosecutorial misconduct.  As the Michigan Court of Appeals noted, the prosecutions's argument was based on the evidence presented at trial and in no way diminished its own burden of proof.  Moreover, the trial court properly instructed the jury about the presumption of innocence and the prosecution's burden of proof.

Petitioner further asserts that the prosecutor engaged in misconduct by referencing facts not in evidence when she discussed petitioner's departure from the crime scene in his van.  The Michigan Court of Appeals held that a review of the record did not confirm petitioner's characterization of the closing argument because the prosecution accurately summarized the trial testimony.  Petitioner fails to present clear and convincing evidence that the foregoing conclusion is incorrect.  Thus, the Court finds that the state appellate court properly disposed of the prosecutorial misconduct claims.   In any event, habeas relief must be denied because the state court's decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S., at ——, 131 S. Ct., at 786–787.

**B.     Sufficiency of the Evidence Claim**

Petitioner asserts that the prosecutor proffered insufficient evidence to support his first-degree murder conviction because it failed to adduce evidence of intent, premeditation and deliberation.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  On direct appeal, sufficiency of the evidence

8

review examines whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, (citing *Jackson,* 443 U.S. at 319). Second, even if the Court concluded "that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

With respect to the charge of first-degree murder, "the prosecution must prove that the defendant intentionally killed the victim and that the killing was premeditated and deliberate." *People v. Anderson*, 209 Mich. App. 527, 537 (Mich. Ct. App. 1995). Premeditation may be inferred by the circumstances surrounding the killing. *People v. Marsack,* 231 Mich. App. 364, 371 (Mich. Ct. App. 1998).

The Michigan Court of Appeals set forth a comprehensive discussion of the facts supporting the conviction:

At the time of the April 14, 2008 shooting at 18053 Bradford Street, the victim and defendant shared a prior relationship to the extent that they drank and played dominoes together over the course of a few hours that evening, and may have attended a gathering together at some point previously.  Larry Ward, who resided at 18053 Bradford Street, testified that within an hour or two before the shooting, the victim had performed a rap, and that when defendant expressed an interest in "get[ting] down with y'all," the victim replied, "[W]e don't let bums sign up on our label[ ]."  As defendant left the house within an hour or two later, he expressed in a "mean" tone of voice to Nashanda Ivory, who also lived at 18053 Bradford Street, "[Y]'all be moving up off this mother f***er today, and I'll be riding off in that n****r car," which Ivory interpreted as a threat "to do something to the house" and the victim's car.  Multiple witnesses estimated that defendant waited outside in or near his van for 10 to 20 minutes or more for the victim to leave.  Darryl Foster, who had parked behind defendant's van earlier that evening, recalled that he engaged defendant in discussion in the back of defendant's van, and that when the victim walked outside and headed toward his car defendant removed a revolver from a brown bag and placed it in his waistband.  The victim got inside his car, but got back out very shortly thereafter and began walking toward the house; Foster described at trial that he saw the victim's and defendant's "lips moving" at some point after the victim left the house, but Foster denied hearing any discussion or yelling.  The testimony of Foster and Janet Laston, the victim's cousin, reflected that defendant intercepted the victim, pulled the gun from his waistband, began firing at the victim, and continued firing at the victim as he tried to flee up the block on foot.  The evidence agreed that the victim never possessed a weapon.  After Ward heard gunshots, he ran outside to confront defendant, who told Ward "my mother-f***ing cousin talk too much," pointed the gun at Ward, and pulled the empty gun's trigger a couple times before running away.  The medical examiner confirmed that the victim had five gunshot wounds, four of which had entered his back.

Viewed in the light most favorable to the prosecution, the evidence that (1) the victim had insulted defendant, (2) defendant waited outside 18053 Bradford Street for the victim to leave the house, (3) when the victim came outside defendant retrieved his revolver, intercepted the victim, commenced firing at the victim and then emptied the revolver in the victim's back as he fled, (4) defendant told Ward the victim talked too much, and (5) defendant fled the scene, constituted an ample foundation for the jury's reasonable finding beyond a reasonable doubt that defendant intended to kill the victim and premeditated and deliberated the victim's murder.  With respect to defendant's complaint that the trial testimony contained many inconsistencies, our review of the record reveals that the witnesses agreed or their testimony remained consistent concerning most of the basic aspects of the April 14, 2008 shooting.  In any event, to the extent that inconsistencies existed among the trial witnesses or between the witnesses' trial

10

testimony and their prior statements, we will not revisit the jury's weighing of the testimony and credibility determinations.

*Tramble*, 2012 WL 3186219 at *2.

Viewing the testimony presented at trial in the light most favorable to the prosecution, the Court finds that petitioner's conviction was supported by legally sufficient evidence. Consequently, habeas relief must be denied with respect to this claim as well.

### C.    Ineffective Assistance of Counsel Claim

Finally, petitioner maintains that he received ineffective assistance of counsel because counsel failed to object to various instances of prosecutorial misconduct and committed other "repeated trial errors and omissions."

An attorney's performance rises to the level of ineffective assistance of counsel when its is both deficient and prejudicial to the outcome of the trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Performance is deficient when it falls "outside the wide range of professionally competent assistance." *Id.* at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

To satisfy the prejudice prong, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689. Federal courts may grant habeas relief only when the underlying state court decision unreasonably applies the standard enunciated in *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). "The question is not whether a federal court believes

11

the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.* at 123 (internal quotation omitted).

The Michigan Court of Appeals held that trial counsel's failure to object to the prosecutor's conduct did not constitute ineffective assistance of counsel because said conduct was not improper.  Similarly, petitioner's reference to additional unspecified errors allegedly committed by defense counsel is unavailing.  As a result, the Court of Appeals reasonably applied the *Strickland* standard when it dismissed petitioner's ineffective assistance claim.

## IV.   Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  A petitioner must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).  In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state any claim upon which habeas corpus relief could be granted.  Therefore, the Court denies a certificate of appealability.

Accordingly,

IT IS ORDERED that the petition for a writ of habeas corpus is denied and the matter is

dismissed with prejudice.


IT IS FURTHER ORDERED that a certificate of appealability is denied.


      S/Bernard A. Friedman                  
      BERNARD A. FRIEDMAN
      SENIOR UNITED STATES DISTRICT JUDGE

DATE:  July 18, 2012      

13